IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JEFFREY BRENT BROOKS    )
            )
v.           )   No. 3:15-1034
            )
BOILERMAKERS-BLACKSMITH  )
UNION NATIONAL PENSION TRUST )


To: The Honorable Kevin H. Sharp, Chief District Judge


# R E P O R T   A N D   R E C O M M E N D A T I O N

Currently pending are cross motions for judgment on the record filed, respectively, by

Defendant Boilermakers-Blacksmith Union National Pension Trust ("Defendant" or "the Trust")

and Plaintiff Jeffrey Brooks ("Plaintiff" or "Brooks"). Docket Entry Nos. "DE" 9, 11. Plaintiff

has filed a response in opposition to Defendant's motion (DE 14), to which Defendant has filed a

subsequent reply. DE 15. Defendant has also filed a response in opposition to Plaintiff's motion.

DE 13. Both motions have been referred to the Magistrate Judge for report and recommendation.

DE 12.

For the reasons that follow, the undersigned Magistrate Judge respectfully recommends

that Defendant's motion (DE 9) be **GRANTED** and that Plaintiff's motion (DE 11) be

**DENIED**.


# I. BACKGROUND

This matter involves Plaintiff's claim for long-term disability benefits pursuant to an

employment benefit plan administered by Defendant. Plaintiff initially filed his complaint in the

Chancery Court of Stewart County, Tennessee, and invoked jurisdiction pursuant to 29 U.S.C. § 1332(e)(1), which holds, in pertinent part, that state courts and U.S. district courts "shall have concurrent jurisdiction of actions" that seek recovery of benefits under the terms of a plan that is subject to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. 1001 *et seq.* Defendant removed the action to this Court, however, pursuant to 28 U.S.C. § 1446,[1] based on the doctrine of preemption:

> [W]hen a federal statute wholly displaces the state-law cause of action through complete pre-emption, the state claim can be removed … This is so because [w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law … ERISA is one of these statutes.

*Aetna Health Inc. v. Davila*, 542 U.S. 200, 207-08, 124 S. Ct. 2488, 2495, 159 L. Ed. 2d 312 (2004) (internal citations and quotations omitted).

As an initial matter, the Court notes that Plaintiff's complaint alleges state law claims of breach of contract and unjust enrichment. *See* Plaintiff's Complaint (DE 1-1) at 3, 8. However, as noted by Defendant, claims that seek benefits pursuant to a plan that is governed by ERISA, such as the instant one, are preempted by ERISA and subject to federal law. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62-63, 107 S. Ct. 1542, 1546, 95 L. Ed. 2d 55 (1987) ("[A]s a suit by a beneficiary to recover benefits from a covered plan, it falls directly under § 502(a)(1)(B) of ERISA, which provides an exclusive federal cause of action for resolution of such disputes.") (internal citation omitted); *see also Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 54, 107 S. Ct. 1550, 95 L. Ed. 2d 39 (1987) ("The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if

---

[1] A defendant … desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal …." 28 U.S.C. § 1446(a).

ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA."). Indeed, the purpose of ERISA is "to completely preempt the area of employee benefit plans and to make regulation of benefit plans solely a federal concern." *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991) (internal citation omitted).

Plaintiff's complaint specifically seeks benefits that were denied pursuant to a pension plan administered by Defendant. DE 1-1 at 8.[2] Preemption under ERISA applies broadly to state law claims that "relate to" employment benefit plans, specifically when (1) Congress has indicated an intent to "occupy the field," and (2) Congress has provided a remedy for the alleged wrong. *Perry v. P*I*E Nationwide Inc.*, 872 F.2d 157, 160 (6th Cir. 1989) (internal citations omitted). Congress has clearly intended for ERISA to "occupy the field," *see Pilot Life, supra*, and Plaintiff seeks redress by way of an award of benefits pursuant to an employment benefit plan administered by Defendant. DE 1-1 at 8. Plaintiff's claims are therefore subject to § 502(a)(1)(B) of ERISA, which states that a civil action may be brought by a participant to an ERISA-governed plan "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B).

Plaintiff does not advance his state law claims in either his motion for judgment on the record or his response to Defendant's motion for judgment on the record. The Court assumes that Plaintiff has elected not to pursue his initial state law claims for breach of contract and unjust enrichment based on the preemption doctrine discussed above. Regardless, the Court finds that such state claims are preempted by ERISA, and will therefore review Plaintiff's cause of action

---

[2] As discussed below, Plaintiff was denied benefits pursuant to a plan that was in effect at the time his application was filed, and now seeks benefits pursuant to a plan that was in effect before he filed his application.

exclusively under § 502(a)(1)(B) of ERISA, the only avenue under which he may pursue his claim.[3]

The facts of this case are straightforward. Defendant is a "trust fund established and jointly maintained by a labor union and contributing employers for the purpose of providing pension benefits" to eligible participants according to the terms of a written plan. DE 10 at 3. The plan under which the benefits are administered is known as the Twelfth Restatement of the Pension Plan Document ("Twelfth Restatement" or "the Plan"). *See* Transcript of the Administrative Record at BNF 00001-00137.[4] The Twelfth Restatement provides that an employee becomes a participant in the plan once he or she has completed one hour of "Covered Employment," which is defined as "work for which your Employer is required to make Contributions to this Plan under a Participation Agreement or a Collective Bargaining Agreement with the International Union, affiliated districts, or Local Lodges." BNF 00150.[5]

Under Section 4.09 of the Twelfth Restatement, a participant in the Plan is entitled to receive a disability pension if he becomes "totally and permanently disabled prior to attaining age 65" and the participant:

(a) Has been awarded a Social Security Disability Benefit under Title II of the Social Security Act, a Social Security Supplemental Income Award for disability …;

(b) Has credited to his account at least 1,000 Hours of Work in Covered Employment …;

---

[3] Plaintiff has not at any point alleged that Defendant has failed to supply requested information, which would present a claim under § 502(c). *See* 29 U.S.C. § 1132(c).

[4] The Transcript of the Administrative Record, which was filed by Defendant pursuant to Court order (DE 8), contains Bates-stamped numbering that includes the abbreviation "BNF" followed by the corresponding page number, located in the bottom right corner of each page. For purposes of consistency, the Court will use this abbreviation to reference the Administrative Record.

[5] Plaintiff disputes that the Twelfth Restatement of the Pension Plan Document governs in this case and argues that an earlier version of the Plan should be controlling based on the date of his injury, as discussed in detail below.

(c) For a participant whose application for a Disability Pension is postmarked or submitted to the Fund Office on or after October 1, 2008, has at least 120 Hours of Work in Covered Employment either in the Plan Credit Year in which he became totally and permanently disabled or in the immediately preceding Plan Credit Year; and

(d) Has filed a written application for benefits with the Fund Office in accordance with Section 8.01, together with a notice of award of disability benefits from the Social Security Administration ….

BNF 00032-00033.

Plaintiff was a boilermaker who participated in the Trust from 2002 to 2007, which included a significant number of Covered Employment hours during that period: 1,138 hours in 2002; 1,714.4 hours in 2003; 2,240.75 hours in 2004; 619.5 hours in 2005; and, 341.5 hours in 2006. DE 10 at 3; BNF 00276. Plaintiff also "received payment" for 656 hours of Covered Employment in 2007. *Id.*

On December 9, 2006, Plaintiff suffered a severe injury while working at a job for Frank Lill & Son, Inc. when a piece of steel ductwork weighing approximately 40,000 pounds fell on him. DE 11 at 1; DE 10 at 3. He was transported by life flight to Vanderbilt University Medical Center, where he was treated for a displaced sacral fracture, multiple pelvic ring fractures, a severed urethra, and bladder dysfunction. DE 11 at 1-2. Over the next four years, Plaintiff underwent extensive treatment that included multiple surgeries and other operations. *Id.* at 2.

Following the injury, Plaintiff began receiving workers' compensation benefits. *Id.* His treating physician, Dr. Douglas Milam, opined that Plaintiff reached maximum medical improvement ("MMI") on August 18, 2010, but later revised this to October of 2010. *Id.* On January 20, 2012, a workers' compensation settlement agreement pertaining to Plaintiff's injuries was entered in the state Circuit Court for Houston County, Tennessee. BNF 00336-00344.

On October 21, 2010, Plaintiff applied for Social Security disability benefits relating to the injuries he sustained on December 9, 2006. DE 11 at 3; BNF 00444. Plaintiff eventually appeared for a hearing before Administrative Law Judge ("ALJ") Elizabeth Neuhoff on March 14, 2013, and was subsequently granted Social Security disability benefits on March 22, 2014. *Id*. Of note, although the benefits pertained to the injuries he sustained on December 9, 2006, Plaintiff amended his alleged onset date of disability during the hearing to November 16, 2010. BNF 00439. The record reveals the following exchange between Plaintiff and the ALJ that prompted this decision:

> ALJ: You alleged that you became disabled on December 9, 2006. Is that date correct?
>
> Plaintiff: Yes.
> …
>
> ALJ: So is there a reason that you waited until October 21, 2010, to apply for disability?
>
> Plaintiff: I understood that while I was under Workers' Comp[ensation] that I couldn't. That is what I understood.

BNF 00417. The ALJ then broached the possibility of amending the alleged onset date in light of the significant lapse of time between the injury and his application, as well as the worsening of his condition in November of 2010:

> [I]t looks [like] he went in for his first excision and debridement of the abscess, November 16, 2010, and it's the start, it gets worse after that point … I can't tell you what to do, but the amended onset date I am going to tell you that he is not going to get paid back to 2006, so normally when there is an onset date that is so remote like that, I always ask counsel … if they have a position regarding this onset date because that is just too remote, since 2006.

*Id*. Following discussion with counsel, the ALJ advised Plaintiff that his disability would be granted, and, pursuant to a request from Plaintiff's counsel, that the alleged onset date would be amended to November 16, 2010. BNF 00424.

On April 4, 2013, Plaintiff contacted Defendant's Fund Office to request an application to file for disability pension benefits under the Plan. DE 10 at 4. On May 2, 2013, Defendant received Plaintiff's completed application, which included the decision of the ALJ granting Social Security benefits. BNF 00455-00477. On May 7, 2013, Defendant submitted a letter denying Plaintiff's application based on Section 4.09(c) of the Plan, which, for applications completed after October 1, 2008, requires the participant to complete at least 120 hours of Covered Employment during the year "in which he became totally and permanently disabled or in the immediately preceding" year. BNF 00446-00447. The letter specifically referenced the November 16, 2010 date in support of its denial of Plaintiff's application:

> Your Notice of Award issued from the Social Security Administration indicates you were found to be disabled as of November 16, 2010 (2011 Plan Credit Year). You do not qualify for a Disability Pension because you failed to accumulate at least 120 Hours of Work in Covered Employment during the Plan Credit Year you were found disabled by the Social Security Administration (October 1, 2010 – September 30, 2011) or in the immediately preceding Plan Credit Year (October 1, 2009 – September 30, 2010)[.]

BNF 00447. Plaintiff appealed this decision, and Defendant subsequently sent a letter to Plaintiff on September 19, 2013 in which it stated that it "would like to request additional information from the Social Security Administration regarding the determination of the date you became disabled …," and asked Plaintiff to complete an authorization form that would allow it do so. BNF 00369. However, after obtaining additional information from the Social Security Administration ("SSA"), Defendant again determined that Plaintiff was not eligible for disability pension benefits on April 10, 2015. BNF 00411. Plaintiff thereafter filed the instant lawsuit.

# II. ANALYSIS

## A. Standard of Review

The standard of review utilized by the Court depends on whether the plan at issue is subject to ERISA. The Court reviews the decision of an administrator of an ERISA plan under either the "arbitrary and capricious" standard of judicial review or the *de novo* standard. *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 613 (6th Cir. 1998). If the ERISA plan gives the administrator of the plan discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the arbitrary and capricious standard applies. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57, 103 L. Ed. 2d 80 (1989); *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996). If such discretionary authority is not granted to the administrator, the *de novo* standard applies. *Id*.

The parties to the instant case agree that the Plan at the heart of this dispute is governed by ERISA, and further agree that the arbitrary and capricious test is the appropriate standard of review. DE 10 at 7-8; DE 11 at 5. Indeed, the Plan expressly states that Defendant "shall have complete discretion to construe, interpret, and apply all terms and provisions of [the] Plan …. BNF 00085. Accordingly, the Court's review of Defendant's decision to deny Plaintiff's claim is subject to the arbitrary and capricious standard.

Under the arbitrary and capricious standard, the Court must determine "whether the plan administrator's decision was rational in light of the plan's provisions." *Shelby Cty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 933 (6th Cir. 2000) (internal citations and quotations omitted). This standard of review is "highly deferential," *id*., and is utilized "in order to avoid excessive judicial interference with plan administration." *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988) (internal citation and quotations

omitted). However, "[d]eferential review is not no review, and deference need not be abject." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003) (internal citation and quotations omitted). A decision by the plan administrator "is not arbitrary and capricious if it is based on a reasonable interpretation of the plan." *Shelby Cty. Health Care Corp.*, 203 F.3d at 933-34 (citing *Johnson v. Eaton Corp.,* 970 F.2d 1569, 1574 (6th Cir. 1992)). The plan administrator "must discharge its duties with respect to the plan in accordance with the documents and instruments governing the plan," and must adhere to the plain meaning of the language contained in the plan "as it would be construed by an ordinary person." *Id*. at 934 (citing *Callahan v. Rouge Steel Co.,* 941 F.2d 456, 459-60 (6th Cir. 1991)).

## B. Conclusions of Law

Defendant submits that the lone issue in this matter is whether the decision by its plan administrator, the Trustees, to deny Plaintiff's appeal of his application for pension disability benefits based on the aforementioned 120-hour rule was arbitrary and capricious. DE 10 at 7. Plaintiff's brief argues that the issues are twofold: (1) whether it was arbitrary and capricious for Defendant to use the amended alleged onset of disability date determined during Plaintiff's Social Security hearing, November 16, 2010, as a basis for denying his claim; and (2) whether Defendant acted arbitrarily and capriciously when it denied Plaintiff's application without "consult[ing] or us[ing] the terms" contained in the *Eleventh* Restatement of the Pension Plan Document ("the Eleventh Restatement"), the plan that preceded the Twelfth Restatement and did not contain the 120-hour rule that became effective on October 1, 2009. DE 11 at 8-9. Defendant's argument based on the 120-hour rule and Plaintiff's argument regarding the pre-October 1, 2009 Plan involve the same substantive issue that the Court will address first.

One of the primary purposes of ERISA is to "ensure the integrity and primacy of the written plans." *Health Cost Controls v. Isbell*, 139 F.3d 1070, 1072 (6th Cir. 1997) (internal citations omitted). Accordingly, the plain language of the ERISA plan at issue "should be given its literal and natural meaning." *Id.* The text of the Twelfth Restatement implemented by Defendant unambiguously states that it became effective on October 1, 2009. BNF 00009. Any pensions or benefits commenced after October 1, 2009 were subject to the terms of the Twelfth Restatement. *Id.* Plaintiff concedes that he did not file his application for pension benefits until April 23, 2013. DE 11 at 4.[6] Therefore, barring some extenuating circumstance, the Twelfth Restatement, and not an earlier version of this plan, applies to Plaintiff's claim for pension benefits.

Plaintiff claims such an exception to this clear language, however, noting that the Twelfth Restatement became effective almost three years after his injury and therefore should not apply to his application. DE 11 at 9. Plaintiff thus asks the Court to disregard the plain language of the Twelfth Restatement, which the Court declines to do. A court may not ignore the plain language of a policy unless there is an "ambiguity necessitating a choice between reasonable interpretations of the policy language." *Isner v. Minnesota Life Ins. Co.*, 677 F. Supp. 2d 950, 957 (E.D. Mich. 2009) (citing *Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 850 (6th Cir. 2006)). Based on the filing date of Plaintiff's application, no such ambiguity exists in this case.

Nevertheless, Plaintiff complains that the Eleventh Restatement was "not even considered" by Defendant, and notes that the terms of the Eleventh Restatement "are only contained within the administrative record in Plaintiff's letter dated March 31, 2015," which Plaintiff submitted as part of his appeal of Defendant's decision to deny his claim. BNF 00415-

---

[6] The date listed on Plaintiff's application is actually April 29, 2013. BNF 00455. This discrepancy, however, is not relevant to the Court's analysis.

416.[7] Plaintiff thus appears to fault Defendant for failing to include the entire text of the Eleventh Restatement in the administrative record despite its inapplicability to the instant claim. The Court is not persuaded by this implicit procedural challenge, however, as the Eleventh Restatement has no bearing on Plaintiff's claim due to his delay in filing his application for benefits until 2013. The provision added to the Twelfth Restatement that Plaintiff hopes to circumvent, namely the requirement that an applicant work 120 hours of Covered Employment either in the year he became disabled or the preceding year, explicitly applies to an individual "whose application for a Disability Pension is postmarked or submitted to the Fund Office on or after October 1, 2008[.]" BNF 00333.

Additionally, Plaintiff was given the opportunity to challenge the sufficiency of the administrative record by way of an order entered December 2, 2015: "If there is a dispute about what constitutes the administrative record, by no later than February 1, 2016, Plaintiff shall inform the Court of the precise nature of the dispute and what additional materials Plaintiff would include in the administrative record." DE 5 at 3. Plaintiff brought no such dispute to the Court's attention, instead opting to file his motion for judgment based on the administrative record submitted by Defendant. DE 11. Any argument regarding the adequacy of the record has therefore been waived. Accordingly, the Court finds that Defendant's decision to process Plaintiff's claim pursuant to the terms of the Twelfth Restatement instead of the Eleventh Restatement was not arbitrary and capricious.

Based on this conclusion, the Court similarly finds that Defendant acted neither arbitrarily nor capriciously in denying Plaintiff's claim based on the previously discussed 120-hour rule. In light of the applicability of the Twelfth Restatement, it would have been error for

---

[7] Only three sentences from the Eleventh Restatement are included in this letter, all of which pertain to the requirements necessary to become eligible for benefits prior to implementation of the Twelfth Restatement. BNF 00415-416

Defendant not to consider the 120-hour rule in reaching its decision, as this is an unambiguous requisite for an award of disability pension benefits. Section 4.09(c) of the Twelfth Restatement explicitly states that an applicant must have worked 120 hours of Covered Employment either in the year in which he became disabled or the immediately preceding year. BNF 00033. Plaintiff has admitted that he did not meet this condition of the Twelfth Restatement: "I meet all of the requirements, *except for having 120 hours of work in covered employment in the plan credit year* in which [S]ocial [S]ecurity [determined that Plaintiff was] totally disabled." BNF 00467. Accordingly, Defendant was obligated to assess Plaintiff's claim subject to this unfulfilled condition. *See Norris v. Ford Motor Co.*, 353 F. Supp. 2d 855, 860 (E.D. Mich. 2004) (requiring the "strict construction of plan terms [as] mandated under ERISA.").

Plaintiff finally argues that it was arbitrary and capricious for Defendant to deny his claim based on the amended alleged onset of disability date chosen during his Social Security hearing, November 16, 2010, since this date was nearly four years after his initial injury. DE 11 at 8. Unfortunately for Plaintiff, the terms of the Plan were amended in August of 2008 to include the following provision:

> Effective October 1, 2008, in order to qualify for a Disability Pension, you must have at least 120 hours of work in Covered Employment either in the Plan Year in which you became totally and permanently disabled or in the immediately preceding Plan Year. Please note *the date Social Security … determines you became disabled* is the date used to determine whether you have at least 120 hours of work – not the date of your Notice of Award or the date you start receiving Social Security … disability benefits.

BNF 00254, 00257 (emphasis in original). This change was implemented almost two years after Plaintiff sustained the injury in question, but was still over four years before Plaintiff filed his application for disability pension benefits. As such, based on terms of the Plan that were in effect several years before Plaintiff filed his claim, and several years before the Social Security hearing,

the date on which Plaintiff became disabled for purposes of Section 4.09(c) is November 16, 2010. *See* BNF 00439. There is no dispute that Plaintiff failed to work 120 hours of Covered Employment in 2009 or 2010. Plaintiff therefore fails to meet the criteria for an award of disability pension benefits under the Plan.

Nevertheless, Plaintiff claims that there is "no requirement within the plan that the onset date used by the [S]ocial [S]ecurity [A]dministration would be the onset date used in determining the date of disability." *Id*. While this may be technically true, the previously discussed amendment promulgated in August of 2008 clearly provides notice that the SSA's determination of the disability onset serves as the basis for Defendant's consideration of the applicant's disability. *See* BNF 00257. Plaintiff's contention that this provision should be disregarded because Defendant "does not show any letters addressed to Plaintiff informing this change[] will be made" (DE 14 at 3) rings hollow, as such a burden does not lie with Defendant. *See Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 343 (6th Cir. 2011) ("[The claimant] bears the burden of proving that the Plan Administrator's decision was arbitrary or capricious."). The Court also notes that Plaintiff does not deny that he received notice of the amendment.

Plaintiff was given the opportunity to select his disability date during his hearing before the Social Security ALJ. The ALJ specifically asked Plaintiff's attorney to select the date of alleged onset, at which point November 16, 2010 was chosen based on the worsening of Plaintiff's condition at that time. BNF 00424.[8] This selection, which was made while Plaintiff was represented by counsel, coupled with Plaintiff's decision to delay his application for Social Security disability benefits until October of 2010, bound Plaintiff to the terms of both the August

---

[8] Plaintiff underwent excision and debridement of an abscess on this date. DE 11 at 2.

2008 amendment and the Twelfth Restatement. Plaintiff's argument that Defendant's reliance on the onset date established by the SSA is arbitrary and capricious therefore fails.

The Court certainly expresses sympathy for Plaintiff's predicament. He suffered a severe injury in December of 2006 that, had he applied in a timely manner, likely would have entitled him to disability benefits under the Plan. However, he waited more than six years to file his application, which subjected him to the terms of an updated plan that precluded an award of benefits based on Section 4.09(c) of the Twelfth Restatement. It was not arbitrary and capricious for Defendant to deny pension benefits based on the clear language contained in that plan, which is the standard by which the Court must review Plaintiff's claim. *See Mitzel v. Anthem Life Ins. Co.*, 351 F. App'x 74, 81 (6th Cir. 2009) ("Under the arbitrary and capricious standard, courts must *favor* a plan administrator's interpretation over an equally reasonable contrary interpretation.") (citing *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004)) (emphasis in original).

Plaintiff responds by arguing that he was unable to apply for disability pension benefits until he received an award of Social Security benefits. DE 11 at 9. Plaintiff notes that he advised Defendant in a letter dated April 23, 2013 that he was unable to apply for Social Security benefits until he had reached MMI with respect to his workers' compensation claim. BNF 00467. The parties did not clearly address whether an award of Social Security benefits is required before filing an application for pension benefits under the Twelfth Restatement. Pursuant to Section 8.01(c), if a determination of disability is made by the SSA after July 1, 2002, as is the case here, the applicant is required to file his application within 90 days of the SSA determination for his application to be considered timely. *See* BNF 00057. There is no additional language regarding the timeliness of an application, although the Court notes that the Twelfth

Restatement requires the applicant to provide Defendant with a copy of a Notice of Award from the SSA to be eligible for pension benefits. *See* BNF 00169-00170. Defendant also states in its responsive brief that Plaintiff "could not have applied for the pension disability benefit without an award from the Social Security Administration." DE 13 at 6.

Nevertheless, Plaintiff provides no support for the contention that he could not apply for Social Security benefits while he was still receiving workers' compensation benefits. The Sixth Circuit has held that a decision by another governmental agency regarding a claimant's disability is not determinative of disability in the Social Security context. *See McCann v. Califano*, 621 F.2d 829 (6th Cir. 1980).[9] A workers' compensation determination is not dispositive as to whether a claimant is entitled to Social Security disability benefits, and Plaintiff did not bring to the Court's attention any requirement that a claimant wait until a workers' compensation claim is resolved before filing a claim for benefits with the SSA.

Here, Plaintiff did not apply for Social Security benefits until October of 2010, nearly four years after his injury. DE 11 at 3; BNF 00444. As discussed above, this subjects him to the 120-hour rule requirement contained in Section 4.09(c) of the Twelfth Restatement. Moreover, the relevant issue under the Plan is not when Plaintiff applied for Social Security benefits, but rather when the SSA determined that Plaintiff became disabled. During the Social Security hearing, the ALJ explicitly gave Plaintiff the opportunity to either proceed with his original alleged onset date, December 9, 2006, or amend it to a later date based on the delay in filing his application. BNF 00417. Plaintiff elected to proceed with an onset date of November 16, 2010.

---

[9] The Code of Federal Regulations also provides that disability decisions by other governmental agencies and non-governmental agencies are not determinative of a claim for Social Security disability benefits. *See* 20 C.F.R. § 404.1504. *See also Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 477 (6th Cir. 2008) (citing *Hampton v. Sect'y of Health & Human Servs.*, 972 F.2d 347, 1992 WL 188112, at *1 (6th Cir.1992) (unpublished table decision) (holding that a claimant is not entitled to Social Security disability "just because he is receiving worker's compensation")).

BNF 00424. This provided a clear basis on which Defendant could deny Plaintiff's claim under Section 4.09(c) of the Twelfth Restatement and the August 2008 amendment. The Court reiterates its sympathy for this seemingly harsh outcome, but Plaintiff's failure to apply both for Social Security benefits and pension benefits in a timely fashion based on a misunderstanding of the law and the relevant Plan provisions does not render Defendant's reliance on the November 16, 2010 date to deny benefits arbitrary and capricious. *See Resilient Floor Decorators Ins. Fund v. Campau Floor Covering, Inc.*, No. 99-cv-72316, 2000 WL 760708, at *4 (E.D. Mich. May 4, 2000) ("[I]gnorance of the actual contract terms … does not excuse the party from complying with the terms of the contract.") (citing *Iron Workers' Local No. 25 Pension Fund v. Allied Fence & Sec. Sys ., Inc.,* 922 F. Supp. 1250, 1258-59 (E.D. Mich. 1996)).

As noted by Defendant, Plaintiff's assertion that the Eleventh Restatement should have governed the administrator's consideration of Plaintiff's claim resembles an argument that Defendant is equitably estopped from applying the Twelfth Restatement to Plaintiff's application. With respect to an ERISA plan, a claim of equitable estoppel requires Plaintiff to demonstrate five elements: (1) a representation of a material fact by Defendant; (2) awareness of the true facts by Defendant; (3) intent by Defendant to act upon that misrepresentation; (4) unawareness of the true facts by Plaintiff; and (5) justifiable reliance by Plaintiff on the misrepresentation. *Bailey v. U.S. Enrichment Corp.*, 530 F. App'x 471, 476 (6th Cir. 2013) (internal citations omitted).

Here, Plaintiff presents no evidence of a misrepresentation by Defendant. There is no indication that Defendant's actions "contain[ed] an element of fraud, either intended deception or such gross negligence as to amount to constructive fraud," which is required to invoke equitable estoppel. *Crosby v. Rohm & Haas Co.,* 480 F.3d 423, 431 (6th Cir. 2007) (quoting *Trs. of Mich.*

*Laborers' Health Care Fund v. Gibbons,* 209 F.3d 587, 591 (6th Cir. 2000)). To the contrary, Plaintiff makes no claim that Defendant misled him in any way regarding the operation of his application for pension benefits. Even if there had been such a misrepresentation, Plaintiff has not pleaded any facts indicating that he reasonably relied on the misrepresentation to his detriment. *See Bailey*, 530 F. App'x at 476 ("[W]hen a party seeks to estop the application of an unambiguous plan provision, he by necessity argues that he reasonably and justifiably relied on a representation that was inconsistent with the clear terms of the plan."). Plaintiff instead claims merely that Defendant should have applied the preceding Eleventh Restatement of the Pension Plan to Plaintiff's application instead of the Twelfth Restatement based on the date of his injury, which falls well short of the requirements for equitable estoppel.

The decision by a plan administrator will not be deemed arbitrary or capricious as long as "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." *Davis By & Through Farmers Bank & Capital Trust Co. of Frankfort, Kentucky v. Kentucky Fin. Companies Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989). The Court must uphold a benefits determination if it is "rational in light of the plan's provisions." *Judge v. Metro. Life Ins. Co.*, 710 F.3d 651, 657-58 (6th Cir. 2013) (quoting *Jones v. Metro. Life Ins. Co.,* 385 F.3d 654, 661 (6th Cir. 2004)). Plaintiff's claim offers no evidence that Defendant's decision in this matter was arbitrary and capricious. Indeed, Defendant's decision was based on adherence to the Twelfth Restatement, which was in effect at the time of Plaintiff's application. The Court therefore finds no basis to overturn the administrator's decision.

## III. RECOMMENDATION

Based on the foregoing, the Magistrate Judge respectfully recommends that:

(1) Plaintiff's motion for judgment on the record (DE 11) be DENIED; and

(2) Defendant's motion for judgment on the record (DE 9) be GRANTED.

Any party has fourteen (14) days from service of the Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from service of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 47 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge